# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **D.M. and R.P.**

**No. 20-0089** (Fayette County 19-JA-72 and 19-JA-73)

**FILED**
**November 4, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother J.P., by counsel Susie Hill, appeals the Circuit Court of Fayette County's January 15, 2020, order terminating her parental rights to D.M. and R.P.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Anthony Ciliberti Jr., filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her an improvement period and finding that there was no reasonable likelihood that the conditions of neglect or abuse could be corrected in the near future.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2017, the DHHR filed the first abuse and neglect petition against petitioner and M.P., the father of R.P., due to their issues with domestic violence and drug abuse in the home. At a dispositional hearing held in February of 2018, M.P.'s parental rights to R.P. were terminated, and the circuit court ordered petitioner to have no contact with M.P. In fact, the circuit court specifically ordered that if petitioner were contacted by M.P., she was to tell him his parental rights had been terminated, cease any further contact, and inform the circuit court of the contact immediately. In December of 2018, the circuit court returned the children to petitioner's custody and dismissed the petition after petitioner successfully completed an improvement period.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

In April of 2019, the DHHR filed the instant child abuse and neglect petition against petitioner. The DHHR alleged that police officers responded to reports of a domestic dispute in petitioner's home and found M.P. there. According to the DHHR, petitioner permitted M.P. to move back into the home around December of 2018, against the circuit court's order. The DHHR alleged that there was no indication that M.P. had addressed either his violent behavior or his drug addiction since the prior termination of his parental rights to R.P. Child Protective Services ("CPS") workers spoke to petitioner, who stated that she could not deny that M.P. had been around the children and that she was aware of her actions, but that her "kids should not suffer because of her stupid decisions." CPS workers also interviewed D.M., who reported that M.P. had been living with them since the prior proceedings concluded. D.M. divulged that petitioner and M.P. fought "by yelling [at each other] pretty much every day." D.M. also reported that M.P. "had gotten into her face" during fights with petitioner and she further alleged that M.P. was abusing drugs. In sum, the DHHR concluded that petitioner failed to protect the children from M.P. and exposed the children to domestic violence in the home. Petitioner waived her preliminary hearing.

The circuit court held an adjudicatory hearing in August of 2019. Petitioner stipulated to the allegations contained in the petition. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. Subsequently, petitioner filed a motion for a post-adjudicatory improvement period. The circuit court held a hearing on petitioner's motion in September of 2019. In support, petitioner presented the testimony of a service provider who testified that petitioner had produced no positive drug screens during the proceedings and participated in five supervised visits with the children. The provider stated that the visits went well and both petitioner and the children wanted them to continue. A CPS worker testified that petitioner was compliant with supervised visits. However, on cross-examination, the worker noted that the DHHR continued to receive reports that petitioner and M.P. maintained their relationship. The CPS worker also provided details regarding the prior case and how petitioner was instructed that M.P. could not be around her or the children.

The DHHR called petitioner to testify. Petitioner admitted that she had been informed during the prior proceedings that M.P. was prohibited from having contact with her and the children. Petitioner also admitted to allowing M.P. to move back into the home and continuing contact with him even after the filing of the instant petition. In fact, petitioner testified she had "frequent" contact with M.P. through August of 2019—only one month prior to the hearing. Nevertheless, petitioner insisted that she would cease contact with M.P. if the circuit court were to grant her an improvement period. Following petitioner's testimony, the circuit court found that when the prior case was dismissed in 2018, it had felt that reunification of the children with petitioner was in the children's best interests. The circuit court believed petitioner in the prior case when she said she would not allow M.P. around the children. The circuit court concluded that petitioner's testimony in the immediate proceeding indicated she would reenter a relationship with M.P., which was a danger to the children. Accordingly, the circuit court denied petitioner's motion for a post-adjudicatory improvement period.

In December of 2019, the circuit court held a dispositional hearing. At the conclusion of the hearing, the circuit court found that, in the prior case, petitioner promised that she would take care of the children and would not permit M.P. back in the home. However, petitioner allowed M.P. to move back into the home and continued to engage in domestic violence in the presence of

the children. The circuit court noted that "as long as [M.P.] is alive, [petitioner] will do whatever she can to make sure that he is in her life." The circuit court further noted the trauma suffered by the children at the hands of M.P. Ultimately, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. It is from the January 15, 2020, dispositional order terminating her parental rights that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period. Petitioner contends that she met her burden of proof in demonstrating that she was likely to fully participate in an improvement period. According to petitioner, she complied with all drug screenings and supervised visitation. Petitioner claims that she would have benefitted from counseling and that she should have been granted an improvement period prior to the termination of her parental rights. We disagree.

This Court has held that "a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000). West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has

---

[2]M.P.'s parental rights to R.P. were terminated during the prior proceedings. The permanency plan for the child is adoption by her foster family. D.M.'s father was deemed a non-abusing parent during the proceedings and the permanency plan for D.M. is to remain in the care of her father.

discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

Petitioner failed to demonstrate that she was likely to fully participate in an improvement period. While petitioner points out that she attended supervised visits with the children and submitted to drug screens, petitioner failed to correct the conditions of abuse that led to the filing of the petition. Here, a prior petition was filed against petitioner and M.P. due to their issues with domestic violence. Petitioner was granted an improvement period, which she successfully completed, and the children were returned to her care. However, petitioner was repeatedly instructed that M.P., whose parental rights had been terminated due to his inability to address the issues of abuse, was prohibited from contact with the children. Despite the circuit court's instruction, petitioner allowed M.P. to move back into the home almost immediately after the petition against her was dismissed. The couple continued to engage in domestic violence such that law enforcement intervened, leading to the filing of the instant petition. Petitioner's children were removed from her care in April of 2019, yet she continued to maintain contact with M.P. during the instant proceedings for at least four months. Although petitioner claimed that she made a mistake and would not let M.P. around the children if she were granted an improvement period, the circuit court found that petitioner was not sincere and would continue to associate with M.P. despite the danger to her children. Given this evidence, we find no error in the circuit court's decision to deny petitioner a post-adjudicatory improvement period.

Petitioner also argues that the circuit court erred in terminating her parental rights when there was not sufficient evidence to support its finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. However, the evidence as set forth above also supports the termination of petitioner's parental rights.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect on her own or with help. As noted above, petitioner was granted a post-adjudicatory improvement period in her prior case and was provided with services aimed at correcting the issues of abuse.[3] Petitioner complied with services such that she convinced both the circuit court and the parties involved that she had successfully addressed her issues with domestic violence and would not permit M.P. around the children. However, petitioner immediately

---

[3]Petitioner claims that she was never offered services to address her history of domestic violence. However, the portion of the record to which petitioner cites in support of this argument does not reference any of the services provided to her. Moreover, a review of the record indicates that petitioner admitted that she never requested any additional services from the DHHR beyond the ones that were provided to her.

resumed her relationship with M.P. once the petition against her was dismissed and maintained that relationship for at least four months *after* her children were removed from her custody in the instant case. Petitioner maintained the relationship knowing that it was preventing her from remedying the conditions that led to the petition's filing and despite knowing that her children were traumatized from the violence perpetrated by M.P. Based on this evidence, we cannot find that the circuit court erred in finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future as petitioner demonstrated an inadequate capacity to solve her issues of abuse on her own or with help.

Lastly, while petitioner claims that she should have been granted a less-restrictive disposition than termination of her parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 15, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: November 4, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison